1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ROSENTHAL-ZUCKERMAN,

Plaintiff,

v.

EPSTEIN, BECKER & GREEN
LONG TERM DISABILITY PLAN,
ET AL.,

Defendants.

No. CV 13-4249-CBM-CW

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

This Order constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52 following a trial on the briefs with supporting evidence. The Court finds that Plaintiff is entitled to the disability benefits in dispute, $24,536.13, with interest.

## I.   JURISDICTION

This Court has jurisdiction over this matter under 29 U.S.C. § 1132(e).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This is an ERISA case in which the Court must interpret a contractual term

1    in Plaintiff's disability insurance plan (the "Disability Plan"). There is no dispute
2    that Plaintiff is disabled. Rather, the disputed issue is whether contributions to
3    Plaintiff's pension plan as part of her part-time employment constitute "Actual
4    Monthly Residual Earnings" ("AMRE") for purposes of calculating Plaintiff's
5    disability benefit.

6        Plaintiff was a trial attorney and worked at the law firm Epstein, Becker and
7    Green until she became disabled in 1995. Defendants are:

8        • Epstein, Becker & Green Long Term Disability Plan;
9        • Paul Revere Life Insurance Company ("Paul Revere"), the original
10           insurer and administrator of the Disability Plan;
11       • Unum Insurance Company ("Unum"), which purchased Paul Revere
12          and is now the insurer and administrator of the Disability Plan. All
13          references in this Order to "Defendants" mean Paul Revere and
14          Unum.

15       After becoming disabled, Plaintiff began to receive disability benefits from
16   Defendants. To continue receiving disability benefits, Plaintiff has periodically
17   submitted forms to Defendants, including information about Plaintiff's current
18   employment and income she receives. (Plt.'s Trial Brief 2:12-18.)). During the
19   relevant time period, Plaintiff worked part-time as a teacher at a high school. (*Id.*
20   at 2:20-22; AR 52, 57.)

21       In connection with her work at the school, Plaintiff participated in a 26
22   U.S.C. § 403(b) pension plan (the "§ 403(b) Pension Plan"), which allows Plaintiff
23   to defer a part of her income into a tax-sheltered retirement account that she
24   cannot access until retirement without incurring penalties. (*See* Plt.'s Trial Brief
25   4:3-13; AR 57.) As part of this § 403(b) Pension Plan, Plaintiff's employer
26   deposits a portion of Plaintiff's bi-monthly compensation directly into a § 403(b)
27   Pension Plan account. (*See, e.g.*, AR 57, 424 (paystubs submitted to Defendants
28   showing § 403(b) contributions).)

1    The terms of Plaintiff's disability benefits are contained in the Disability

2    Plan Policy document, which Defendants drafted.  Under the terms of the

3    Disability Plan Policy, if Plaintiff works part-time, she can still receive her full

4    disability benefit as long as she does not earn 20% or more of her pre-disability

5    income.  (Plt.'s Trial Brief 5:25-27; *see* AR 86.)  If she earns 20% or more, then

6    there is a pro-rata reduction in her Disability Plan benefit.  (Plt.'s Trial Brief 5:25-

7    6:2.)  The amount of Plaintiff's Disability Plan benefit is thus determined by

8    calculating Plaintiff's current AMRE and comparing that to her pre-disability

9    income.  (*Id.* at 6:8-10.)  If her current AMRE is 20% or more of her pre-disability

10    income, then her Disability Plan benefit is reduced.

11    In June 2010, after reviewing Plaintiff's last pay stub for 2009 and

12    Plaintiff's W-2 tax form, Defendants decided that money deposited by Plaintiff's

13    employer into Plaintiff's § 403(b) Pension Plan constitutes part of her AMRE.

14    (AR 431.)  Prior to June 2010, Defendants had not treated these payments as part

15    of Plaintiff's AMRE.  (*See id.* at 431, 508.)  Once the payments were included into

16    AMRE, Plaintiff's AMRE exceeded the 20% threshold, which led to Defendants

17    imposing a pro-rata reduction in Plaintiff's Disability Plan benefit.  (*See id.* at

18    508.)  Based on Defendants' interpretation of AMRE, it had overpaid Plaintiff

19    $56,403.08 because the payments to the § 403(b) Pension Plan should have been

20    included in the calculation of AMRE.  (*Id.*)  However, Defendants' internal

21    guidelines limit its claim to the previous 24 months of alleged overpayment, so the

22    amount at issue in this case is $24,536.12.  (*Id.*)

23    Plaintiff filed suit on June 13, 2013.  Plaintiff seeks a judicial declaration

24    that she is entitled to $24,536.13 plus interest.  (*See* Compl. 4:28-5:5 (Docket No.

25    1).)  Plaintiff and Defendants filed simultaneous Trial Briefs on May 13, 2014 and

26    Responding Trial Briefs on May 27, 2014.  (Docket Nos. 24, 25, 29, 30.)  The

27    Court heard oral argument on July 1, 2014.  (Docket No. 32.)

28

### III.  STANDARD OF LAW

"[A] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Thomas v. Oregon Fruit Prods. Co.*, 228 F.3d 991, 993 (9th Cir. 2000) (quotation marks omitted).  Here, it is undisputed that the Court should review Defendants' decision under the *de novo* standard because while the parties dispute how AMRE is defined, Defendants do not have discretion to determine eligibility determine eligibility for benefits or to construe the terms of the plan.

### IV.  DISCUSSION

The instant case involves contributions to Plaintiff's § 403(b) pension plan.  A § 403(b) pension plan is a tax-sheltered retirement savings plan for employees of non-profit employers.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 1002 (9th Cir. 2010).  A § 403(b) pension plan is similar to the popular 26 U.S.C. § 401(k) savings account, which allows the employees of for-profit entities to save for retirement by diverting a pre-tax portion of their income to a retirement account that has preferential tax treatment and which the employee cannot access until he or she retires without incurring a penalty.  *See id.*

The question in the present matter is one of contract interpretation.  The issue is whether contributions to a § 403(b) pension plan are part of AMRE under the terms of Disability Plan Policy.  If the answer is yes, then contributions to Plaintiff's § 403(b) Pension Plan should be included in calculating AMRE and Defendants were correct to reduce her Disability Plan benefit under the Plan.  If the answer is no, then Defendants were wrong to reduce her Disability Plan benefit.  The Court finds that contributions to Plaintiff's § 403(b) Pension Plan do not constitute AMRE.

**A.**  **The Disability Plan Policy's Definition of AMRE Is Ambiguous**

"A contract or a provision of a contract is ambiguous if it is reasonably

1   susceptible of more than one construction or interpretation." *Castaneda v. Dura-*
2   *Vent Corp.*, 648 F.2d 612, 619 (9th Cir. 1981). "The existence of an ambiguity in
3   a contract is a question of law." *Port of Portland v. Water Quality Ins. Syndicate*,
4   796 F.2d 1188, 1194 (9th Cir. 1986).

5       Plaintiff is an employee of the high school where she teaches. The
6   Disability Plan Policy's definition of AMRE states that AMRE for an employee
7   "means the Employee's salary, wages, commissions, bonuses, fees, and income
8   earned for services performed." (AR 85.) Plaintiff argues the definition of
9   employee AMRE is ambiguous because it is not clear from the plain language of
10  the definition whether payments to her § 403(b) Pension Plan must be included in
11  "salary" or "income earned for services performed." (Plt.'s Trial Brief 10:21-
12  11:5.) Defendants argue that the definition of AMRE is not ambiguous. (*See,*
13  *e.g.,* Defs.' Responding Trial Brief 4:3-8:4.) Defendants contend the term
14  "income earned for services performed" includes § 403(b) pension plan
15  contributions because "[t]here are no exceptions and no exclusionary language in
16  the AMRE definition. Given this expansive definition, common sense dictates
17  that AMRE includes *all* employment income regardless of the form in which it is
18  paid." (*Id.* at 4:8-9 (emphasis in original).)

19      The Court finds that the Disability Plan Policy's definition of AMRE is
20  ambiguous because it is reasonably susceptible to more than one construction or
21  interpretation. *Castaneda*, 648 F.2d at 619. The definition does not state that
22  contributions to a § 403(b) pension plan constitute AMRE. Indeed, the Disability
23  Plan Policy's definition of employee AMRE is silent as to § 403(b) pension plan
24  contributions and as to pension plan contributions in general. Accordingly, the
25  Disability Plan Policy's definition of AMRE could reasonably be interpreted as
26  including or not including § 403(b) pension plan contributions.

27      Furthermore, "actual monthly residual income" by its terms refers to
28  "residual" income—*i.e.*, income remaining after certain items have been removed.

1  Merriam Webster Dictionary, http://www.merriam-
2  webster.com/dictionary/residual, last accessed July 21, 2014 (defining "residual"
3  as "remaining after a process has been completed or something has been
4  removed."). This implies the AMRE cannot simply mean "all employment
5  income regardless of the form in which it is paid," as Defendants suggest. (Defs.'
6  Responding Trial Brief 4:8-10.)

7      Because the Court finds that the Disability Plan Policy's definition of
8  employee AMRE is ambiguous as to whether § 403(b) pension plan contributions
9  constitute AMRE, other rules of contract interpretation must be used to determine
10 whether § 403(b) pension plan contributions constitute AMRE. *Cf. Meckert v.*
11 *Transamerica Ins. Co.*, 763 F.2d 1071 (9th Cir. 1985).

12     **B.    Expressio Unius Est Exclusio Alterius**

13     Plaintiff argues the principle of *expressio unius est exclusio alterius*
14 resolves this case in her favor. This rule of contract interpretation states that "to
15 express or include one thing implies the exclusion of the other, or of the
16 alternative." Black's Law Dictionary (9th ed. 2009); *Murphy v. DirecTV, Inc.*,
17 724 F.3d 1218, 1234 (9th Cir. 2013) ("the rule of construction expressio unius est
18 exclusio alterius; i.e., that mention of one matter implies the exclusion of all others
19 is an aid to resolve the ambiguities of a contract.") (citation and quotation marks
20 omitted).

21     The Disability Plan Policy's definition of AMRE for employees is silent as
22 to whether § 403(b) pension plan contributions constitute AMRE. (*See* AR 85.)
23 However, the Disability Plan Policy defines AMRE for other types of persons who
24 might receive disability benefits. (*Id.*) One of these other definitions explicitly
25 includes pension plan contributions. Specifically, the Disability Plan Policy's
26 definition of AMRE for an employee/shareholder—*i.e.,* an employee who, unlike
27 Plaintiff here, owns part of the company for whom he or she works—states:
28 "Employee/Shareholder earnings means the total gross salary, ***pension/profit***

1  *sharing plan contributions* made on behalf of the individual, and the
2  proportionate share of the current year corporate net profit." (*Id.* (emphasis
3  added).)  This demonstrates that when Defendants (who drafted the Disability Plan
4  Policy) wanted to include pension plan contributions in the definition of AMRE
5  for a Plan beneficiary, they knew how to do it.  Accordingly, Defendants' decision
6  to not mention pension plan contributions in the definition of employee AMRE
7  shows that the definition of employee AMRE does not include § 403(b) pension
8  plan contributions.

9  Defendants argue that the definition of employee/shareholder AMRE is not
10  relevant to the instant matter because Plaintiff is an employee, not an
11  employee/shareholder.  (Defs.' Responding Trial Brief 6:17-7:3.)  Defendants are
12  correct that the definition of employee/shareholder AMRE does not control the
13  calculation of Plaintiff's AMRE because she is an employee and not an
14  employee/shareholder.  Nevertheless, Defendants' drafting decision to include
15  pension contributions in the definition of employee/shareholder AMRE shows that
16  (1) Defendants understood that pension contributions may be involved in
17  calculating AMRE for Plan beneficiaries and (2) Defendants chose not to include
18  pension contributions in the definition of employee AMRE.

19  In sum, applying the principle *expressio unius est exclusio alterius* shows
20  that contributions to a § 403(b) pension plan do not constitute AMRE for purposes
21  of Plaintiff's Disability Pension Plan.

22  **C.   Contra Proferentem**

23  Plaintiff argues the doctrine of *contra proferentem* resolves this case in her
24  favor.

25  *Contra proferentem*, which is recognized by federal common law and
26  the law of every state and the District of Columbia, holds that if, after
27  applying the normal principles of contractual construction, the
   insurance contract is fairly susceptible of two different
28  interpretations, another rule of construction will be applied: the

interpretation that is most favorable to the insured will be adopted. The rule applies in interpreting ambiguous terms in an ERISA-covered plan except where the plan: (1) grants the administrator discretion to construe its terms, (2) is the result of a collective-bargaining agreement, or (3) is self-funded.

*Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 625 (9th Cir. 2007) (citations and quotation marks omitted).

The parties do not address whether the three exceptions articulated in *Blankenship* apply here. However, courts apply *contra proferentem* only if other rules of contract interpretation have failed to resolve the disputed issue. *Id.* As discussed above, the doctrine of *expressio unius est exclusio alterius* resolves this case in Plaintiff's favor, so the principle of *contra proferentem* does not apply here. [1]

## V.   CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff is entitled to the disability benefits in dispute, $24,536.13, with interest. [2]

**IT IS SO ORDERED.**

DATED: 8 / 8 , 2014

_____
Honorable Consuelo B. Marshall
United States District Judge

---

[1] If the doctrine of *expressio unius est exclusio alterius* did not determine the outcome of this case, then the Disability Plan Policy's definition of AMRE would still be ambiguous and the doctrine of *contra proferentem* may apply. If that were the case, the Disability Plan Policy's definition of employee AMRE would be interpreted in Plaintiff's favor under *contra proferentem*. *Blankenship*, 486 F.3d at 625.
[2] Because the Court finds in Plaintiff's favor on the basis of *expressio unius est exclusio alterius*, the Court need not reach Plaintiff's remaining three arguments: (1) *ejusdem generis*; (2) equitable estoppel; and (3) Plaintiff did not actually or constructively receive the payments deposited by Plaintiff's employer into Plaintiff's § 403(b) Pension Plan.